## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| DIANIA NEMCIK, on behalf of herself and all others similarly situated, | Case No: |
| | Judge: |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM INC., a Delaware Corporation; and ANCESTRY.COM LLC, a Delaware limited liability company, | JURY TRIAL DEMANDED |
| Defendants. | |

## CLASS ACTION COMPLAINT
### For Violation of Ohio Right of Publicity and Misappropriation of Name and Likeness

Plaintiff DIANIA NEMCIK, by and through her attorneys, makes the following allegations on information and belief, except as to factual allegations pertaining to Plaintiff, which are based on personal knowledge.

## NATURE OF ACTION

1.      Plaintiff Diania Nemcik ("Plaintiff") and members of the proposed class (the "Class" or "Class members") seek damages, an injunction, and additional relief from Defendants ("Ancestry" or "Ancestry.com"), which own and operate the website www.ancestry.com. Ancestry used Plaintiff's and Class members' names and personas to promote paid subscriptions to the Ancestry website without consent in violation of Ohio's right of publicity statute, Ohio Rev. Code § 2741, and Ohio common law prohibiting misappropriation of a name or likeness.

2.      Plaintiff and Class members are private individuals who have no relationship with Ancestry. Plaintiff and the Class have never used Ancestry.com, nor did they provide their names,

photographs, or any other personal information to Ancestry.

3.      Plaintiff was seriously distressed to discover that Ancestry is using the names and photographs of Ohio students and teachers without their consent to advertise paid subscriptions to Ancestry.com.

4.      Plaintiff and the Class did not consent to Ancestry using their names, photographs, and personas to promote Ancestry.com subscriptions.

5.      Ancestry uses Plaintiff's and Class members' names and likenesses in at least three advertising techniques. In all three advertising techniques, Ancestry displays the Plaintiff's and Class members' photographs in low-resolution or time-limited formats to a potential customer. Ancestry promises the potential customer that purchasing a paid subscription to Ancestry.com will reveal the full versions of Plaintiff's and Class member's photographs and personal information. Ancestry promises that a paid subscription will also deliver many additional services, including the ability to search for and view billions of additional records about millions of other individuals. Searchable records included with an Ancestry.com subscription include yearbook photos, marriage records, baptism records, death certificates, divorce records, photographs of grave sites, and others.

6.      In the first of its advertising techniques, Ancestry provides a publicly accessible landing page on which a visitor may search by name and location for any person. In response to searches for the Plaintiff's and Class members' names, Ancestry delivers a list of yearbook photographs in its possession showing the Plaintiff's and Class members' names and faces. Plaintiff's and Class members' photographs are accompanied by promotional text urging the visitor to "Sign Up Now" for an Ancestry.com subscription. The promotional text promises that "There's more to see" about the Plaintiff and Class members if the visitor buys a subscription,

including higher-resolution photographs and additional personal information about Plaintiff and Class members, such as city of residence, estimated age, and high school graduation year.

7.     In the second advertising technique, Ancestry sends promotional emails and on-site messages to users who have provided their email addresses to Ancestry but have not yet purchased a paid subscription plan. These emails and messages use the Class members' names and identities. For example, Ancestry sends promotional emails to non-paying users with the subject line "What should you explore next for [Class member]?" A link in the body of the email encourages the user to click on the Class member's name to view records about her. Users who click the link and attempt to view records about the Class member receive in response a webpage asking the user to subscribe to Ancestry.com.

8.     In the third advertising technique, Ancestry offers a two-week "free trial" membership during which users may access and use the full range of services associated with an Ancestry website subscription. "Free trial" users may search for, view, print, and share the Plaintiff's and Class members' photographs and personal information including cities of residence, estimated birth years, and graduation dates. Ancestry's sole purpose for using the Plaintiff's and Class members' photographs and personal information as part of its "free trial" membership is to solicit the purchase of paid memberships.

9.     By using Plaintiff's and Class members' names, photographs, and identities in its advertising, Ancestry misleads the consuming public into believing Plaintiff and Class members are Ancestry.com users, willingly uploaded their personal information to Ancestry.com, and endorse Ancestry's subscription product. In fact, Plaintiff and the Class have no relationship with Ancestry, had no knowledge their names and photographs were being used, and do not approve of Ancestry's use of their names and likenesses to advertise Ancestry.com subscriptions.

Ancestry's website and advertising communications fail to disclose that Plaintiff and the Class are unaffiliated with Ancestry.

10.    Ancestry does not present the Plaintiff's and Class members' photographs as "samples" advertising the purchase of the photographs themselves. Ancestry uses Plaintiff's and Class members' names and photographs to advertise subscriptions to Ancestry.com. An Ancestry.com subscription includes far more than access to the Plaintiff's photographs. At costs ranging between $24.99 and $49.99 per month, a subscription to Ancestry.com entails a wide range of services, including the ability to: "Grow a family tree with exclusive search tools"; "Connect with fellow members"; "Access 15+ billion records" from the U.S.; "Expand your search with 3+ billion worldwide records"; "Find stores among 142+ million pages in the Newspapers.com Basic subscription"; "Explore 537+ million original military records on Fold3.com"; and "Enjoy premium support with a dedicated 1-800 number."[1]

11.    Ancestry is the sole author, designer, and implementor of the advertising techniques and messages giving rise to this lawsuit. Ancestry does not host user-generated content on any part of the website relevant to this lawsuit. Ancestry is the sole curator, designer, and creator of the content described in this Complaint.

12.    Flouting Ohio law, Ancestry did not notify Plaintiff or obtain her written consent prior to publishing her name and photograph on its advertising webpages. Accordingly, Plaintiff does not know with certainty how Ancestry obtained her name and photograph. Ancestry's website states that the photographs were originally printed in school yearbooks but does not disclose how Ancestry obtained copies of Plaintiff's and Class members' school yearbooks.

13.    On information and belief, Ancestry obtained the names and yearbook

---

[1] https://www.ancestry.com/cs/offers/compare

photographs in its database by paying licensing to third parties in exchange for the purported right to make commercial use of the names and photographs therein. No such third party entity obtained Plaintiff's prior written consent before making commercial use of Plaintiff's name and persona, as required by Ohio law. On information and belief, no third party entity obtained any Class members' prior written consent.

14. Ancestry appropriated Plaintiff's and Class members' photographs without permission from the Plaintiff and the Class, the photographers who took the pictures, the authors who created the school yearbooks, or the publishers of the school yearbooks. Ancestry does not hold copyright in Plaintiff's or Class members' yearbooks, nor does it have permission from the copyright holder to republish or distribute Plaintiff's or Class members' yearbooks.

15. Plaintiff and the Class may have consented to have their photographs taken for school yearbooks intended solely for print distribution amongst a narrow circle of friends, faculty, family, and schoolmates. Plaintiff and the Class did not consent to the commercial use of their photographs to promote a website, nor to the worldwide distribution of their photographs on the Internet.

16. Ancestry fails to provide any mechanism by which Plaintiff or the Class may request that their photographs and personal information be removed from Ancestry's website. Nor does Ancestry allow Plaintiff or the Class to opt out of the use of their names and photographs in advertisements for subscriptions to Ancestry.com.

17. Ohio law recognizes the intellectual property and privacy rights of individuals in controlling the use of their names, photographs, likenesses, and personas for commercial purposes.

18. By using Plaintiff's and Class member's names, likenesses, photographs, and

personas in advertisements for website subscriptions without consent, Ancestry violated their intellectual property and privacy rights. Plaintiff and Class members have the right not to have their names, likenesses, photographs, and personas exploited to promote a website with which they have no relationship and which they have no interest in promoting. Plaintiff and Class members have an economic interest in their names, likenesses, photographs, and personas, which Ancestry has stolen, and a privacy interest in their names, likenesses, photographs, and personas, which Ancestry has violated. Ancestry has been unjustly enriched through its actions. Plaintiff and Class members have the right to recover the money Ancestry earned exploiting their names, likenesses, photographs, and personas.

19.     By these actions, Ancestry has violated Ohio's Right of Publicity statute, codified in Ohio Rev. Code § 2741, and Ohio common law prohibiting misappropriation of a name or likeness. Ancestry used multiple aspects of Plaintiff's and Class members' personas for the commercial purpose of selling website subscriptions, including names, photographs, images, likenesses, distinctive appearances, and personal information. Ancestry failed to obtain Plaintiff's or Class members' prior written consent for this commercial use. These aspects of Class members' personas have commercial value to Ancestry, to the Class members, to the many companies that compete with Ancestry in the market for selling personal information, and to the schools who published the yearbooks from which Ancestry misappropriated Class members' names and photographs.

20.     Plaintiff and Class members have suffered injury through the unlawful taking of their valuable intellectual property; through the invasion of their privacy rights protected by statute and common law; through Ancestry's unlawful profiting from its exploitation of their names, personas, and personal information; and through harm to peace of mind. Plaintiff and

Class members are entitled to relief including statutory damages, disgorgement of profits, royalties for the use of their names and personas, restitution of the value of their names and personas, an injunction prohibiting Ancestry's unlawful conduct, an award of attorneys' fees, expenses, and costs, and declaratory and injunctive relief.

**JURISDICTION AND VENUE**

21.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act ("CAFA")), because: (A) members of the putative class are citizens of a state different from at least one defendant. According to available public records, none of the Defendants are incorporated in Ohio or have their principal place of business in Ohio. The proposed class is composed primarily of Ohio residents. (B) The proposed class consists of at least 100 members. And (C) the amount in controversy exceeds $5,000,000 exclusive of interest and costs. Ohio Rev. Code § 2741.07 provides for damages equal to either "actual damages, including profits derived and attributable to the unauthorized use," or "statutory damages in the amount of at least two thousand five hundred dollars and not more than ten thousand dollars." Because Ancestry advertises using many thousands of records from Ohio yearbooks, the amount in controversy is well over the jurisdictional amount.

22.     This Court has specific personal jurisdiction over Ancestry because a significant portion of the events giving rise to this lawsuit occurred in this state, including: Ancestry's copying of Plaintiff's and Class member's personal information from yearbooks or other sources located in Ohio; Ancestry's display of Plaintiff's and Class member's names and photographs in advertisements expressly directed at Ohio residents, including Plaintiff's and Class member's families; Ancestry's failure to obtain required consent from Class members in Ohio; and Ancestry's violation of the intellectual property rights of Plaintiff and Class members who reside

in Ohio.

23.    Plaintiff Nemcik resides in this state and District. Ancestry violated Ms. Nemcik's intellectual property and privacy rights and misappropriated her name, personal information, and likeness, the locus of which is in this state and District. Ancestry failed to obtain the required consent in this state and District. Ancestry displayed advertisements using Plaintiff's and Class members names, personal information, and personas in this state and District.

24.    Venue is appropriate pursuant to 28 U.S.C. § 1391(b). A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this district. A substantial portion of the class members reside in this state and district.

## PARTIES

**Defendants**

25.    Defendant ANCESTRY.COM OPERATIONS INC. is a Delaware corporation with its headquarters in Lehi, Utah. It conducts business under the brand names "Ancestry.com," "Ancestry," and other brand names associated with the various websites and services it owns and operates. ANCESTRY.COM INC. is a Delaware corporation with its headquarters in Lehi, Utah. Defendant ANCESTRY.COM LLC is a Delaware limited liability company with its headquarters in Lehi, Utah.

26.    The Defendants own and operate the website www.ancestry.com. Plaintiff refers to the Defendants collectively as "Ancestry." Ancestry advertises and provides its subscription services to consumers throughout this District, Ohio, and the United States.

**Plaintiff**

27.    Plaintiff Diania Nemcik is a resident of Montgomery County, Ohio.

28.    Ms. Nemcik has never visited, used, or subscribed to the website Ancestry.com.

29.     Ms. Nemcik is a former faculty member at Archbold High School in Archbold, Ohio.

## FACTUAL ALLEGATIONS

30.     Plaintiff Diania Nemcik is a private individual who has no relationship with Ancestry. She has never visited, used, or subscribed to Ancestry.com.

31.     Plaintiff Nemcik did not give consent to Ancestry to use her name, photograph, likeness, or persona in any way. Ancestry never requested her prior consent, as required by Ohio law. Had Ancestry requested her consent, Ms. Nemcik would not have provided it.

32.     Neither Ancestry, nor any third party from whom Ancestry may have purchased and/or licensed copies of Ms. Nemcik's photograph, ever contacted Ms. Nemcik to notify her of Ancestry's commercial use, or to request her consent.

33.     Ms. Nemcik highly values her personal privacy and her ability to control and prevent the commercial use and distribution of her personal information, likeness, and persona without her consent.

34.     Ancestry uses at least nine records representing Ms. Nemic's name, photograph, and persona to advertise subscriptions to Ancestry.com.

35.     Ancestry uses Ms. Nemcik's records in at least three types of advertisements. In the **first** type, Ancestry provides a publicly accessible landing page on which visitors may have searched for Ms. Nemcik by name, location, and/or birth year, as shown below:



36. Visitors who searched for Ms. Nemcik received in response nine records derived from Archbold High School yearbooks. The nine records each included Ms. Nemcik's name, location, the name of the school where she works, and a photograph identifiably depicting Ms. Nemcik's likeness. For privacy, Plaintiff's counsel redacted Ms. Nemcik's face. In the original screenshot, she is plainly identifiably. **Users who clicked on the image of Ms. Nemcik's face were brought directly to a screen soliciting a paid subscription.** *See* Para. 37 *below*.



37.    Visitors who hovered over the "View Record" link were shown a promotional pop-up promoting Ancestry subscriptions, which is shown below. The pop-up tied the purchase of a subscription to the prospect of seeing a higher quality image of, and learning more information about, Ms. Nemcik. As shown below, the pop-up promises that "There's more to see" about Ms. Nemcik if the user clicks "Sign Up Now," including "A picture of the original document" and additional personal information about Ms. Nemcik.



38.     Visitors who clicked "Sign Up Now" in the pop-up above, or who clicked on the images of Ms. Nemcik's face shown in search results (*see* ¶ 35), were shown a payment page soliciting the purchase of a membership plan for $24.99 per month. The page says that visitors are paying to receive a broad range of services in addition to information about Ms. Nemcik, including access to the names, images, and personal information about many other individuals. The additional services also include access to "The world's most comprehensive record collection" and the ability to create and grow a "family tree".



39.     On information and belief, Ancestry has displayed lists of search results to visitors that contained one or more of the nine records depicting Ms. Nemcik's face and name, including to visitors in Ohio. On information and belief, one or more visitors viewed the pop-up and/or clicked on Ms. Nemcik's face, leading to the subscription solicitation page, including one or more visitors in Ohio.

13

40.    In the **second** advertising technique, Ancestry sends promotional emails incorporating Class members' names and personas to potential subscribers. On information and belief, Ancestry has sent such emails incorporating Ms. Nemcik's name, including to people in Ohio. Examples of such promotional emails, with names redacted for privacy, are shown below:





41. Ancestry sends these and similar emails bearing Ms. Nemcik's and Class members' names and personas to users who have not yet purchased a paid subscription plan. Users who click on the name shown in the email and attempt to review records about Ms. Nemcik or the Class member receive a web page soliciting a subscription to Ancestry.com at prices ranging from $24.99 to $49.99 per month:



42.     In the **third** advertising technique, Ancestry allows users who have not yet signed up for a paying subscription to search for and view Ms. Nemcik's photographs and personal information as part of a two-week "free trial" membership. Each of the nine records shown in the search results above is available to free trial users, and on information and belief, has been viewed by at least one free trial user, including at least one in Ohio. The records include full-resolution photographs of Ms. Nemcik that plainly identify her, and personal information including her name, location, and place of work that also plainly identifies her.

43.     Ancestry's sole purpose in using Ms. Nemcik's photograph, name, and personal information as part of its "free trial" membership is to solicit the purchase of paid memberships from its "free trial" members.

44.     Ms. Nemcik does not know how Ancestry obtained her name, photographs, and personal information. The photographs appear to have been taken from the yearbooks Ms. Nemcik's high school produced for students, faculty, and family. Ms. Nemcik did not give permission for her name and photographs to appear on Ancestry.com, nor did she consent to their use by Ancestry for a commercial purpose of any kind.

45.     Ancestry appropriated Ms. Nemcik's persona without permission from Ms. Nemcik, the photographer who took her pictures, the authors who created the high school yearbooks, or the publishers of the high school yearbooks. Ancestry does not hold copyright in yearbooks from Archbold High School, nor does it have permission from the copyright holder to republish or distribute the yearbooks or the photographs contained therein.

46.     Ms. Nemcik has intellectual property and privacy interests in her photograph, name, likeness, and persona recognized by Ohio statutory and common law. She has the right to exclude anyone from making commercial use of her persona without her permission.

16

47.     Ancestry has injured Ms. Nemcik by taking her intellectual property without compensation; by invading her privacy rights protected by Ohio statutory and common law; and by unlawfully profiting from its exploitation of her persona.

48.     Ancestry's illegal actions caused Ms. Nemcik mental injury and disturbed her peace of mind. Ms. Nemcik is deeply uncomfortable that Ancestry is profiting from its use of her name, photographs, and persona in advertisements for a website she does not use, endorse, or approve of. Ms. Nemcik believes her persona is rightly hers to control. Ancestry's illegal use has left her worried and uncertain about her inability to control how her name and persona is used. Ms. Nemcik feels that Ancestry's non-consensual commercial use of her name and persona is an alarming invasion of her privacy and intellectual property rights.

49.     Through the foregoing actions, Ancestry used multiple aspects of Ms. Nemcik's persona for the commercial purpose of selling website subscriptions, including her name, photograph, image, likeness, distinctive appearance, and personal information. Ancestry failed to obtain Ms. Nemcik's prior written consent for this commercial use. These aspects of Ms. Nemcik's persona have commercial value to Ancestry, to Ms. Nemcik, to the many companies that compete with Ancestry in the market for selling personal information, and to the school where Ms. Nemcik is employed.

## CLASS ALLEGATIONS

50.     Plaintiff brings this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(43). Plaintiff seeks to represent the following class:

> All Ohio residents who are not Ancestry.com subscribers and whose names and yearbook photographs Ancestry uses to promote website subscriptions.

51.     Excluded from the proposed Class are Plaintiff's counsel; Ancestry, its officers

and directors, counsel, successors, and assigns; any entity in which Ancestry has a controlling interest; and the judge to whom this case is assigned and the Judge's immediate family.

52. The members of the proposed class are so numerous that joinder of individual claims is impractical. Ancestry represents that its database of yearbook photographs includes 730 million records. Of those, 49 million records correspond to schools in Ohio.

53. There are significant questions of fact and law common to the members of the class. These issues include:

a. Whether Ancestry's misappropriation of names, photographs, and personal information, and use of that information in the advertising techniques described in this Complaint, constitute the use of aspects of individuals' personas for a commercial purpose without previous written consent within the meaning of Ohio Rev. Code § 2741.02.

b. Whether Ancestry solicited and obtained written consent from Class members in Ohio prior to the use of their names, photographs, images, likenesses, distinctive appearances, and personas to promote Ancestry's products, as required by Ohio Rev. Code § 2741.02;

c. Whether Ancestry's commercial use of aspects of Class members' personas was "in connection with any news, public affairs, sports broadcast, or account." *See* Ohio Rev. Code § 2741.02(D)(1);

d. Whether Ancestry's commercial use of aspects of the Class members' personas was willful; the extent to which Ancestry is able to pay statutory damages; and the extent of the harm to the Class members, all of which are relevant to determining the amount of statutory damages under Ohio Rev. Code § 2741.07;

     e.    Whether Ancestry's conduct entitles Class members to punitive or exemplary damages under Ohio Rev. Code § 2741.07 and Ohio Rev. Code § 2315.21;

     f.    Whether Ancestry's conducts as described in this Complaint violates Ohio common law prohibiting misappropriation of a name or likeness; and

     g.    Whether Plaintiff and the Class are entitled to injunctive, declaratory, monetary, and other relief requested in this Complaint.

54.    Plaintiff's claims are typical of those of the proposed class. Plaintiff and all members of the proposed Class have been harmed by Ancestry's misappropriation and misuse of their names, photographs, images, likenesses, identities, and personas in advertisements promoting Ancestry.com. Ancestry presents its advertisements in the same way for each Class member.

55.    The proposed Class representatives will fairly and adequately represent the proposed Class. The Class representative's claims are co-extensive with those of the rest of the Class, and they are represented by qualified counsel experienced in class action litigation of this nature.

56.    A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the proposed Class is impracticable. Many members of the Class do not have the financial resources necessary to pursue this claim, and even if they did, the size of their interest in the case may not be large enough to merit the cost of pursuing the case. Individual litigation of these claims would be unduly burdensome on the courts in which individualized cases would proceed. Individual litigation would greatly increase the time and expense needed to resolve a dispute concerning Ancestry's common actions towards an entire group. Class action procedures allow for the

benefits of unitary adjudication, economy of scale, and comprehensive supervision of the controversy by a single court.

57.     The proposed class action may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. Ancestry has acted on grounds generally applicable to the proposed class, such that final injunctive and declaratory relief is appropriate with respect to the Class as a whole.

58.     The proposed class action may be certified pursuant to Rule 23(b)(3). Questions of law and fact common to Class members predominate over questions affecting individual members, and a class action is superior to other available methods for fairly and efficiency adjudicating the controversy.

## FIRST CAUSE OF ACTION
### Ohio Right of Publicity Statute, Ohio Rev. Code § 2741

59.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

60.     Ohio's right of publicity statute prohibits the use of "any aspect of an individual's persona for a commercial purpose" unless the person "first obtains the written consent" of the individual. Ohio Rev. Code § 2741.02 & § 2741.05.

61.     By engaging in the forgoing acts and omissions, Ancestry used aspects of Plaintiff's and Class members' personalities, including their names, photographs, images, likenesses, and distinctive appearances, for a commercial purpose without consent. These aspects of Plaintiff's and Class members' personalities have commercial value, as evidenced by Ancestry's use, similar use by other companies, and commercial use by the schools who published and sold school yearbooks.

62.     Each use of a Class members' personality is a separate and distinct violation of

Ohio Rev. Code § 2741.02.

63.     Plaintiff and the Class members are residents of the state of Ohio. *See* Ohio Rev. Code § 2741.03.

64.     Ohio Rev. Code § 2741.07 provides that a person who violates the statute is liable for (1) "[a]ctual damages, including any profits derived from and attributable to the unauthorized use"; (2) "[a]t the election of the plaintiff and in lieu of actual damages, statutory damages in the amount of at least two thousand five hundred dollars and not more than ten thousand dollars"; and (3) "punitive or exemplary damages" if applicable under Ohio Rev. Code § 2315.21. The statute provides that "[t]he trier of fact shall include any profits derived . . . in calculating the award of actual damages." Ohio Rev. Code § 3741.07.

65.     Because of Ancestry's violation of Ohio Rev. Code § 2741, Plaintiff and the Class have suffered injury to their privacy and intellectual property rights, and actual damages both economic and emotional, including actual damages in the amount of the profits Ancestry derived from its unauthorized use. Plaintiff and Class members have been denied the economic value of their personas, which Ancestry appropriated without compensation. Plaintiff and Class members were denied their statutorily protected right to refuse consent and protect their privacy. Plaintiff and Class members suffered emotional disturbance from the appropriation and misuse of their personas.

66.      On behalf of the Class, Plaintiff seeks statutory damages; actual damages, including Ancestry's profits from its misuse; compensatory damages for royalties Ancestry failed to pay; restitution, punitive and exemplary damages; the award of attorneys' fees and costs; an injunction prohibiting Ancestry's unauthorized use; and declaratory relief. Plaintiff intends to elect between actual and statutory damages at a later stage of the lawsuit, after discovery has

revealed the amount of Ancestry's profits.

## SECOND CAUSE OF ACTION
### Ohio Tort of Appropriation of a Name or Likeness

67. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

68. Ohio common law recognizes the tort of appropriation of a name or likeness. The tort creates a cause of action for the appropriation of a likeness by a defendant for the defendant's "own use or benefit." *See, e.g.*, *Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St. 2d 224, 231 n. 4 (Ohio 1976) (quotation omitted).

69. By engaging in the forgoing acts and omissions, Ancestry appropriated Plaintiff and Class members' names and likenesses for its own commercial benefit.

70. As provided for under Ohio common law, on behalf of the Class, Plaintiff seeks monetary recovery in the amount of the commercial benefit Ancestry derived from its misuse of their likenesses, as well as the entry of an injunction prohibiting Ancestry's tortious acts.

## PRAYER FOR RELIEF

71. WHEREFORE Plaintiff, on behalf of herself and all others similarly situated, hereby demands judgment against Defendant Ancestry as follows:

(a) For an order certifying the proposed Class and appointing Plaintiff and her counsel to represent the Class;

(b) For a declaration that Ancestry's acts and omissions constitute a willful misappropriation of names, likeness, photographs, images, and other personal information, and infringe on protected privacy rights, in violation of Ohio law;

(c) For nominal damages awarded in recognition of Ancestry's violation of the statutorily protected property and privacy rights of Plaintiff and the Class;

(d) For preliminary and permanent injunctive relief enjoining and preventing Ancestry from continuing to operate its Ancestry.com website and expand its databases without appropriate safeguards to ensure people's personal information is not used illegally without their consent;

(e) For an order enjoining Ancestry from continuing the unlawful and unfair conduct described in this Complaint;

(f) For restitution for Plaintiff and Class members of the value that Ancestry derived from misappropriating and using their identities;

(g) For an award of damages, including without limitation damages for actual harm, profits earned by Ancestry from the sale of subscriptions to Ancestry.com, and statutory damages;

(h) For an award of reasonable attorneys' fees, costs, and expenses incurred by Plaintiff and the Class; and

(i) For an award of other relief in law and equity to which Plaintiff and Class members may be entitled.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial for all individual and Class claims so triable.

Respectfully submitted,

Dated: December 27, 2024                    By:  */s/ Michael C. Lueder*
                                            Michael C. Lueder, SBN: 0039450 *(trial attorney)*
                                            Hansen Reynolds LLC
                                            301 N. Broadway, Suite 400
                                            Milwaukee, Wisconsin 53202
                                            mlueder@hansenreynolds.com
                                            Telephone: 414-455-7676
                                            Facsimile: 414-273-8476

                                            Benjamin R. Osborn (to be admitted *pro hac
                                            vice*)
                                            Law Office of Benjamin Osborn PLLC
                                            63 Fiddlers Elbow Road
                                            Margaretville, New York 12455
                                            ben@benosbornlaw.com
                                            Telephone: (347) 645-0464

                                            Raina C. Borrelli (to be admitted *pro hac vice*)
                                            Samuel J. Strauss (to be admitted *pro hac vice*)
                                            Brittany Resch
                                            STRAUSS BORRELLI PLLC
                                            One Magnificent Mile
                                            980 N. Michigan Avenue, Suite 1610
                                            Chicago, Illinois, 60611
                                            raina@straussborrelli.com
                                            sam@straussborrelli.com
                                            bresch@straussborrelli.com
                                            Telephone: (872) 263-1100
                                            Facsimile: (872) 263-1109

                                            Michael F. Ram (to be admitted *pro hac vice*)
                                            Marie N. Appel (to be admitted *pro hac vice*)
                                            MORGAN & MORGAN
                                            COMPLEX LITIGATION GROUP
                                            711 Van Ness Avenue, Suite 500
                                            San Francisco, California 94102
                                            mram@forthepeople.com
                                            mappel@forthepeople.com
                                            Telephone: (415) 358-6913
                                            Facsimile: (415) 358-6923

                                            *Attorneys for Plaintiff Nemcik and the
                                            Proposed Class*