IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DIANIA NEMCIK, on behalf of
herself and all others similarly
situated,

        Plaintiffs,

v.

ANCESTRY.COM INC., et al.,

        Defendants.

Case No. 3:24-cv-335

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION TO DISMISS, DOC. #19; JUDGMENT TO ENTER IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF; TERMINATION ENTRY

---

This case is before the Court on the Motion to Dismiss filed by Defendants Ancestry.com Inc., Ancestry.com LLC, and Ancestry.com Operations Inc. (collectively "Defendants" or "Ancestry"). Doc. #19. Plaintiff Diania Nemcik ("Plaintiff") filed a response in opposition to the motion, Doc. #21, and Defendants filed a reply in support of their motion. Doc. #22.

For the reasons set forth below, Defendants' Motion to Dismiss, Doc. #19, is SUSTAINED.

I. **Procedural and Factual Background**

This case, brought by Diania Nemcik on behalf of herself and others similarly situated, alleges that Ancestry used her name, likeness, and information in targeted

advertisements to solicit paid subscriptions. Plaintiff is a faculty member at Archbold High School in Archbold, Ohio, who has never used Ancestry nor given permission for Ancestry to use her information. Nonetheless, Ancestry has obtained her name and yearbook photo by paying licensing rights to third parties.

Ancestry uses several tactics relevant to this case in order to promote their paid subscription services. If a potential user searches for Plaintiff's name on the Ancestry website, the results will display her name along with the school at which she works. If the user clicks on a result, they are directed to a screen soliciting a paid subscription and are told that they must sign up to see the full results. If a user merely hovers their curser over the result, a pop-up appears on the screen attempting to entice the user to sign up in order to see more.

If a user provided an email address but did not sign up for a paid subscription, they are sent promotional emails. If Ancestry believes that the user may know Plaintiff or have some connection with Archbold High School, these promotional emails include Plaintiff's information. Ancestry also offers a promotional free two-week trial during which users can search for and see Plaintiff's information. Ancestry offers this free trial for the sole purpose of enticing users to enter into a paid subscription at the conclusion of the trial.

Throughout all of Ancestry's attempts to solicit paid subscriptions, they use Plaintiff's name, likeness, and biographical information when it appears likely that

2

the user has some connection with Plaintiff, whether it is because they know Plaintiff personally, by reputation, or because the user attended the school at which she works.

Plaintiff brings two claims in this case: (1) a violation of Ohio's Right of Publicity Statute ("ORPS"), R.C. § 2741.01, *et seq.* ("Claim One"); and (2) a claim under the Ohio Tort of Appropriation of a Name or Likeness ("Claim Two").

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party "has the burden of showing that the [opposing party] has failed to adequately state a claim for relief." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007), citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991). The purpose of a Rule 12(b)(6) motion to dismiss "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on the motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its [well-pleaded] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Treesh*, 487 F.3d at 476.

Nevertheless, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."

3

*Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Legal conclusions "must be supported by well-pleaded factual allegations" that "plausibly give rise to an entitlement of relief." *Id.* at 679.

To survive to the discovery phase, a plaintiff need only establish that the pleadings be plausible, not probable. *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 458 (6th Cir. 2011). "Ferreting out the most likely reason for the defendants' actions is not appropriate at the pleadings stage." *Id.*

### III. Analysis

Defendants present two arguments in their Motion to Dismiss under Fed. R. 12(b)(6). First, they argue that Plaintiff has not alleged that her name or likeness has commercial value, as required by the Ohio Revised Code and binding Sixth Circuit caselaw. Doc. #19, PageID #150–55. Second, they posit that any alleged use of Plaintiff's name or likeness is classified as incidental and therefore not actionable.

4

Doc. #19, PageID #155–58. If Defendants are correct on either point, their motion will be sustained.

### A.  Commercial Value

Plaintiff's two causes of action both require a showing that the Plaintiff's name or likeness has commercial value. R.C. § 2741.02(A) ("[A] person shall not use any aspect of an individual's persona for a commercial purpose."); R.C. § 2741.01(A) ("'Persona' means an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value."); *Roe v. Amazon.com*, 714 F.App'x 565, 568 (6th Cir. 2017) ("[P]laintiffs must demonstrate that their name or likeness has value [to succeed on a claim under the Ohio common-law right of publicity tort]."). Courts consider two factors when assessing the commercial value of a name or likeness: "(1) the distinctiveness of the identity and... (2) the degree of recognition of the person among those receiving the publicity." *Harvey v. Sys. Effect, LLC*, 154 N.E.3d 293, 306 (Ohio Ct. App. 2020).

Defendants argue that Plaintiff has not alleged that her name and likeness have commercial value. Doc. #19, PageID #150–55. Plaintiff responds by citing various paragraphs in the Amended Complaint which they believe constitute the requisite allegations. Doc. #21, PageID #169–73.

Two recent cases prompt examination. First, a decision in another case within the Southern District of Ohio involving Ancestry found that the Plaintiff in

that case plausibly alleged commercial value. *Wilson v. Ancestry.com LLC*, 653 F.Supp.3d 441 (S.D. Ohio 2023) (Sargus, J.) [hereinafter "*Wilson I*"]. The plaintiff in *Wilson* made similar allegations to that by Plaintiff here, including that Defendants purposefully used the individual's persona in advertisements to target potential subscribers. *Compare Wilson*, 653 F.Supp.3d at 455 ("Ancestry publicly displays Wilson's yearbook photo alongside an on-screen message promising the user that '[t]here's more to see' about Wilson while also prompting the user to 'Sign Up Now' for a paid subscription.") *with* Doc. #18, PageID 114–15 ("Ancestry delivers a list of yearbook photographs in its possession showing the Plaintiff's and Class members' names and faces. Plaintiff's and Class members' photographs are accompanied by promotional text urging the visitor to 'Sign Up Now' for an Ancestry.com subscription."). Based on the allegations in the *Wilson* complaint, the court denied a motion to dismiss brought on very similar terms to the one here.[1] *Wilson I*, 653 F.Supp.3d at 462.

A recent unpublished Sixth Circuit decision also has some bearing on the legal analysis in this case. In *Hudson*, the Sixth Circuit affirmed dismissal of a case

---

[1] The *Wilson* court eventually granted summary judgment to the defendants at the conclusion of discovery after the plaintiff was unable to produce any evidence that the alleged commercial use actually occurred. *Wilson v. Ancestry.com LLC*, No. 2:22-cv-861, 2024 WL 3992356 at *4 (S.D. Ohio Aug. 27, 2024) (Sargus, J.) [hereinafter "*Wilson II*"].

6

involving both the ORPS and Ohio's common-law right of privacy. *Hudson v. Datanyze, LLC*, No. 23-3998, 2025 WL 80806 (6th Cir. Jan. 13, 2025) [hereinafter "*Hudson II*"]. In *Hudson II*, plaintiffs advanced a theory that the defendant's "misappropriation of their names or likenesses to solicit paid subscriptions, in and of itself, demonstrates commercial value." *Id.* at *3. The court rejected this theory, and in so doing, spotlighted that the plaintiffs had not alleged that "[defendant] curated and delivered, or otherwise highlighted, Plaintiffs' profiles to potential customers." *Id.*

*Hudson II* and *Wilson I* provide helpful guardrails for determining when a plaintiff has properly alleged that their name and likeness has commercial value. On one hand, *Wilson I* demonstrates which allegations are sufficient to continue to discovery and on the other, *Hudson II* shows which allegations do not pass over the hurdle of a motion to dismiss. Taken together, the cases make it clear that a plaintiff must allege something more than the fact that their likeness was used by a commercial entity. Instead, a plaintiff must allege that a defendant made an effort to use a plaintiff's likeness on specific potential users that may have an interest in that specific plaintiff.

Plaintiff has met that burden here. Several of Plaintiff's allegations in the Amended Complaint posit that Defendants chose to use Plaintiff's name and likeness to potential users, with the intent that potential users would recognize

7

Plaintiff. *See, e.g.,* Doc. #18, PageID #114–16, 124–30 at ¶¶ 6–8, 10, 38–41, 43, 45–47. At this stage, where Plaintiff's factual allegations are taken as true, these allegations are sufficient to show that her name and likeness had commercial value as required under both ORPS and Ohio's common-law right of privacy.

### B. Incidental Use

Even if Plaintiff establishes that their name or likeness has a commercial value, "[t]he mere incidental use of a person's name or likeness is not actionable in an appropriation claim." *Roe v. Amazon.com*, 714 F.App'x 565, 568 (6th Cir. 2017). To constitute actionable use of a name or likeness, the use must suggest that the plaintiff uses, supports, or endorses the defendant's product. *LaFleur v. Yardi Sys., Inc.*, 765 F. Supp. 3d 640, 661 (N.D. Ohio 2025); *Vinci v. Am. Can Co.*, 591 N.E.2d 793, 794 (Ohio Ct. App. 1990).

Defendants liken this case to *Vinci*, a case in which the defendant used the plaintiff's likeness as an Olympic gold medalist on promotional drinking cups. *Vinci*, 591 N.E.2d at 793. The Ohio Court of Appeals found that the use of the plaintiff's name and likeness "was purely informational; there was no implication that the athlete[] used, supported, or promoted the product." *Id.* at 794. For that reason, the court ruled against the plaintiff and upheld the dismissal of his case. *Id.*

In this case, Plaintiff attempts to distinguish her case from *Vinci* by stating that her "name and information is not appearing alongside the product, it *is* the

8

product." Doc. #21, PageID #176 (emphasis in original). Plaintiff points once again to the analysis employed when the *Wilson* court denied a similar motion to dismiss brought by Ancestry. *Wilson I*, 653 F. Supp. 3d 441. In *Wilson*, after finding that the plaintiff adequately pled the commercial value of their name, the court turned to the question of incidental use. After analyzing similar cases from other districts, including yet another case involving Ancestry, the court found that the alleged use of the plaintiff's persona was more than incidental. *Id.* at 457.

Defendants counter this comparison by pointing to two recent Ohio cases which specifically disagreed with the *Wilson* court's incidental use analysis. *LaFleur v. Yardi Sys., Inc.*, 765 F. Supp. 3d 640 (N.D. Ohio 2025); *Hudson v. Datanyze, LLC*, 702 F. Supp. 3d 628 (N.D. Ohio 2023) [hereinafter "*Hudson I*"].

One point of contention between these cases is in trying to understand what constitutes "incidental" use. Black's Law Dictionary defines "incidental" as "Subordinate to something of greater importance; having a minor role" while Merriam-Webster adds a second definition as "occurring merely by chance or without intention or calculation." *Incidental*, Black's Law Dictionary (11th ed. 2019); *Incidental*, Merriam-Webster (2022). These definitions seemingly align with the *Wilson* court's analysis which found that "Ancestry's appropriation of [plaintiff's] persona for the purpose of promoting paid subscriptions establishes Ancestry's deliberate, *and not incidental*, use of [plaintiff's] persona." *Wilson I*, 653 F. Supp. 3d

9

at 457 (emphasis in original). If, under Ohio law, "incidental" is intended to mean "by chance" or non-deliberate, then *Wilson*'s analysis is likely correct.

However, there is a second interpretation of "incidental" supported by Ohio caselaw. *Hudson I*, citing to cases like *Zacchini* and *Vinci*, decided that "incidental" use is use that is "published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity." *Zacchini v. Scripps-Howard Broad. Co.*, 351 N.E.2d 454, 458 n.4 (Ohio 1976); *Hudson I*, 702 F. Supp. 3d at 633. Under this view, the relevant question is not "was the use deliberate or intentional?" as the *Wilson* analysis seems to assume. Instead, the relevant question is "was the use for the purpose of taking advantage of their reputation, prestige, or other value associated with them?"

When applying state law in a case like this, the Court is tasked with applying Ohio law in the same manner as Ohio courts would interpret it. *Cf. Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). With that framing in mind, the Court is convinced that the *Hudson I* view of incidental use is more accurately in line with the meaning given to the term by Ohio courts for multiple reasons. First, applying the *Wilson* analysis would mean that merely deliberate use of a persona would be actionable. Yet notably, Ohio courts, including the Supreme Court of Ohio, have found non-incidental use in cases where the use was certainly deliberate, strongly implying that incidental use and deliberate use are unrelated concepts. *See Zacchini*, 351

10

N.E.2d 224 (Ohio 1976) (Intentional use of "human cannonball" act was held to be incidental use.); *Vinci*, 591 N.E.2d 793 (Ohio Ct. App. 1990) (Intentional choice to advertise well-known Olympic athletes was held to be incidental use.).

Second, when analyzing incidental use in *Wilson*, the court leaned on cases from outside of Ohio. *Wilson I*, 653 F. Supp. 3d at 456–58; *see also Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877 (N.D. Calif. 2022); *Kolebuck-Utz v. Whitepages Inc.*, No. C21-0053, 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021); *Sessa v. Ancestry.com Operations Inc.*, 561 F. Supp. 3d 1008 (D. Nev. 2021). While *Kellman* and *Kolebuck-Utz* involved Ohio law, neither of those courts attempted to understand the meaning of "incidental use" under Ohio law.[2] Therefore, the Court believes that these three cases from other states are not properly indicative of how Ohio courts would apply the law.

Adopting the *Hudson I* view of incidental use, the Court must determine whether Ancestry published Plaintiff's likeness and information in the ads for the purpose of taking advantage of her reputation, prestige, or other value associated with her. If so, their use was non-incidental and thus actionable. If not, Ancestry's use is considered non-actionable, incidental use and protected from claims.

---

[2] *Kellman* included analysis regarding incidental use, but said analysis was only conducted under California law, not under Ohio law. *Kellman*, 599 F. Supp. 3d at 895.

To answer this question, the Court again turns to cases like *Zacchini*, *Vinci*, *Lafleur*, and *Hudson I*. In each of these cases, plaintiffs alleged that defendants had intentionally used their name and likeness. Yet, because each case involved only the presentation of objective facts, without any indication that plaintiffs used, supported, or promoted the product, each case was found to be merely incidental use. *Vinci*, 591 N.E.2d at 794; *Lafleur*, 765 F. Supp. 3d at 661 ("Even when a defendant uses a plaintiff's name in an advertisement, that use is merely incidental if the defendant mentions the name within the context of accurate, historical information and does not imply that plaintiff uses, supports, or promotes the product the defendant is advertising." (quotations omitted)); *Hudson I*, 702 F. Supp. 3d at 634; *Zacchini*, 351 N.Ed.2d 224, 230 n.4.

In this case, Ancestry published accurate, historical information about Plaintiff, including the school at which she worked. Plaintiff here has not alleged that Defendant's use of her identity on the website resulted in potential users believing that she used, supported, or promoted Ancestry. Without such allegations, this case cannot be distinguished from *Zacchini*, *Vinci*, *Lafleur*, or *Hudson I*. Therefore, Ancestry's use of Plaintiff's likeness is incidental and it cannot form the basis of a claim. Plaintiff's case must, therefore, be dismissed. *Roe*, 714 F.App'x at 568.

## IV. Conclusion

For the reasons set forth above, the Motion to Dismiss filed by Defendants Ancestry.com Inc., Ancestry.com LLC, and Ancestry.com Operations Inc., Doc. #19, is SUSTAINED.

Judgment is to be entered in favor of Defendants and against Plaintiff.

The above captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: August 5, 2025

*Walter H. Rice*

WALTER H. RICE
UNITED STATES DISTRICT JUDGE